# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

ARMEDA AYANNA BATCHLER,

    Defendant.

Case No. 2:16-cr-00292-GMN-CWH

**ORDER**

Before the Court is Defendant Armeda Batchler's Motion to Disqualify the United States Attorney's Office for the District of Nevada (ECF No. 23), filed March 20, 2017. The Government responded (ECF No. 27) on April 3, 2017. Batchler replied (ECF No. 30) on April 10, 2017. The Court conducted a hearing on April 26, 2017. (Mins. of Proceedings (ECF No. 32).)

## I. FACTUAL BACKGROUND

On April 21, 2015, the Government, represented by Mr. Smith as the Assistant United States Attorney assigned to prosecute a case, subpoenaed Batchler to testify before the grand jury in a matter regarding Mr. Matthews. Prior to giving her testimony, Batchler was informed of her right to an attorney, and she retained an attorney to assist her with her grand jury testimony. Mr. Smith met with Batchler and her attorney immediately before the grand jury proceeding, and he informed Batchler that she could normally invoke her Fifth Amendment right against self-incrimination, but she could not invoke the Fifth Amendment because the government obtained a court order for her grand jury testimony in exchange for giving her statutory immunity under 18 U.S.C. § 6002. She was also warned that she could be prosecuted for perjury, making false statements, or obstructing justice if she failed to testify truthfully. Batchler testified before the grand jury, and Matthews was indicted. On May 15, 2015, Mr. Smith communicated with Batchler about Matthews by email, and on May 19, 2015, they communicated by telephone.

1  Batchler was subpoenaed to testify at the Matthews trial on October 6, 2016.  At the
2  Matthews trial, Mr. Smith questioned Batchler and she testified in a manner which appeared to be
3  inconsistent with her grand jury testimony.  Mr. Smith confronted her with her previous grand jury
4  testimony, and he elicited admissions to each element of perjury.  At one point during her
5  testimony, Batchler defended her apparently inconsistent statements indicating that before the grand
6  jury, she was "shooken up," had been "threatened by you guys," "threatened losing my job," and
7  that her lawyer told her to "tell you guys whatever you—I needed to hear, so we can get the fuck
8  out of there."  (Tr. (ECF No. 26) at 42 of 143.)

9  After the trial, the grand jury indicted Batchler on October 18, 2016, alleging that on or
10 about October 6, 2016, while under oath as a witness in the case of *United States v. Matthews*, No.
11 2:15-cr-00062-JCM-CWH, she committed perjury, in violation of 18 U.S.C. § 1623(c).

12 Batchler now moves to disqualify the United States Attorney's Office for the District of
13 Nevada, or in the alternative, Mr. Smith and other prosecutors in the Matthews case, from
14 prosecuting this case.  She argues that the prosecutors are material witnesses to the offense before
15 the court, and there is therefore a compelling reason to require the prosecutor's testimony.  She
16 further argues that it is inappropriate to allow a prosecutor to also be a witness in the case, and
17 therefore argues for the prosecutor's disqualification.  The Government responds that in the
18 absence of a showing that any government counsel is a material witness in the case, disqualification
19 is inappropriate.

20 At the hearing in this matter, the Court requested that Batchler proffer the proposed
21 testimony by the prosecution which she believed was necessary for Batchler's defense.  Other than
22 indicating that the testimony would be relevant to the issue of Batchler's criminal *mens rea,* and
23 identifying a particular telephone call between Mr. Smith and Ms. Batchler after the grand jury
24 testimony, she objected to providing specific details of the proposed testimony in the Government's
25 presence.  She argued that by doing so, she would expose the details of her defense which she did
26 not believe was appropriate or required.  She then requested an *in camera* session to explain the
27 need for the testimony.  The Government objected because it desired an opportunity to rebut the
28 proposed testimony.  The Court then received, *in camera* session, information regarding the

testimony which Batchler hoped to elicit from Mr. Smith.[1]

## II. ANALYSIS

The centerpiece of this dispute is the application of the "advocate-witness" rule, which prohibits an attorney from appearing as both a witness and an advocate in the same litigation. *United States v. Prantil*, 764 F.2d 548, 552-53 (9th Cir. 1985)(setting forth the policies served by the advocate-witness rule in a criminal prosecution[2]). The rule is aimed at protecting the integrity of the fact-finding process. *Id*. at 554. Generally, in representing their clients, attorneys must elect in which capacity they intend to proceed, either as counsel or as a witness, and promptly withdraw from the conflicting role. *Id.* at 553. When the proposed testimony is relevant to the adversary's case, however, the opposing party may call the advocate as a witness. *United States v. Nixon*, 418 U.S. 683, 709 (1974) (holding that "[t]o ensure that justice is done, it is imperative to the function of courts that compulsory process be available for the production of evidence needed either by the prosecution or by the defense.")

Although there is no absolute bar to calling a prosecutor as a witness, courts have generally disfavored allowing a participating prosecutor to testify at a criminal trial. *United States v. West*, 680 F.2d 652, 654 (9th Cir. 1982)(holding that a prosecutor who participates in the case should not be called as a witness unless all other sources of possible testimony have been exhausted). A defendant is required to demonstrate a "compelling need" before a participating prosecutor will be permitted to testify. *United States v. Tamura*, 694 F.2d 591, 601 (9th Cir. 1982)(holding that federal courts have universally condemned the practice of a government prosecutor's testifying at a trial in which he is participating; such testimony is permitted only if required by a compelling need).

---

[1] Fed. R .Crim. P. 17(b) provides that an indigent defendant may apply, *ex parte,* for a subpoena for a defense witness if the witness is necessary for an adequate defense. Batchler is indigent, and could have proceeded by requesting a subpoena, and the Court viewed the *in camera* session as equivalent to an *ex parte* application for a subpoena.

[2] The policies include preventing the prestige and prominence of the prosecutor's office from being attributed to the testimony of the testifying prosecutor, avoiding jury confusion, and avoiding the appearance of impropriety to ensure public confidence in the justice system. *Prantil,* 764 F.2d at 553.

Here, Batchler argues that she has a compelling need to call Mr. Smith as a witness. In her *ex parte* proffer, defense counsel explained that Batchler met with Mr. Smith both before and after she provided grand jury testimony. Batchler claims that those conversations with Mr. Smith impacted her testimony, and are therefore relevant to her *mens rea*, that is, whether she knowingly made an inconsistent statement.

The Government argues that the offense charged only requires that the Government prove inconsistent statements regarding material facts were made under oath, and therefore other discussions are not relevant to the issues in dispute. But at the *Matthews* trial, Batchler testified at one point, while being confronted by Mr. Smith with her prior testimony, that she had been "afraid," "shooken up," had been "threatened by you guys," "threatened losing my job," and her retained lawyer told her to "say whatever is necessary to get the fuck out of here." It appears, based upon her trial testimony, that Batchler's understanding of her testimonial obligations, her belief in whether the statements were true, and her ability to explain the inconsistencies were impacted by her discussions with Mr. Smith, and others, and are therefore potentially relevant to her defense.[3]

The government further argues that there were other witnesses to the discussions. Specifically, it appears that Special Agent Nardiello was present during the discussions prior to the grand jury testimony, and Assistant United States Attorney Alexandra Michael was present after the grand jury testimony. Both could testify about the discussions. A defendant has an obligation to exhaust other available sources of evidence before a court should sustain a defendant's efforts to call a participating prosecutor as a witness. *West*, 680 F.2d at 654. But this obligation is not absolute—both the quality and quantity of the alternate sources of evidence are proper subjects for comparison with that sought directly from the participating prosecutor. *Prantil*, 764 F.2d at 551-552. According to Batchler, Mr. Smith would be the best witness to the "off the record" discussions which allegedly occurred. He was the lead prosecutor and the person who communicated directly with Batchler, and based upon her trial testimony, is critical to her ability to

---

[3] It is a defense that at the time of the declaration the defendant believed that the declaration was true. *See* 18 U.S.C. § 1623(c).

explain her testimony. Ultimately, the district judge is charged with the responsibility of deciding the materiality of witness testimony, and it is the jury's responsibility to evaluate the import of the prosecutor's testimony. In so doing, the court must honor the defendant's constitutional rights under the confrontation and compulsory process clauses of the Sixth Amendment. *Id*., at 552. Here, although a close call, the Court finds that Batchler has satisfied the "compelling need" to call Mr. Smith as a witness in her defense. Of course, it is the trial judge who will ultimately decide the admissibility of testimony. Applying the "advocate-witness" rule, the Court finds that Mr. Smith should not be allowed to appear as both a witness and an advocate in the Batchler trial, and must therefore be disqualified as a prosecutor in this case.

Batchler argues for the disqualification of the entire office of the United States Attorney for the District of Nevada, but provides no binding legal authority, other than the advocate-witness rule, for that proposition. Even if Mr. Smith becomes a witness in this case, Batchler has not identified a compelling reason to call the other prosecutor, Ms. Cartier-Giroux, as a witness.[4] Nor does she justify prosecutorial disqualification because Agent Nardellio is a witness—being an investigating law enforcement officer is not improper. No further recusal is necessary.

IT IS THEREFORE ORDERED that Defendant Armeda Batchler's Motion to Disqualify the United States Attorney's Office for the District of Nevada (ECF No. 23) is **granted** in part, and **denied** in part. Mr. Smith is disqualified from serving a prosecutor in the trial of this matter.

DATED: May 2, 2017

_____
**C.W. Hoffman, Jr.**
**United States Magistrate Judge**

---

[4] At the hearing, Ms. Cartier-Giroux indicated that she was not involved in any way in the prosecution of the *Matthews* matter.